# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PAMELA J. B.,

                Plaintiff,

    v.

ANDREW M. SAUL,
Commissioner of Social Security,

                Defendant.

Case No. 19 C 6800

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Pamela J. B. seeks disability insurance benefits ("DIB") based on her claim that she is disabled by several physical and mental conditions. Pamela requests that the Court reverse the ALJ's decision and award benefits or alternatively, remand this case for further administrative proceedings. The Commissioner moves for summary judgment. For the reasons stated below, Plaintiff's request to reverse and remand is granted in part and the Commissioner's motion for summary judgment [19] is denied.

## BACKGROUND

Pamela filed for DIB on January 8, 2016, alleging disability since May 15, 2015 due to bilateral torn rotator cuffs and back problems. Later she submitted evidence that she has been diagnosed with irritable bowel syndrome, Crohn's disease, chronic obstructive pulmonary disease, hypertension, gastroesophageal reflux disease, and urinary frequency. Pamela has also been diagnosed with major depressive disorder, post-traumatic stress disorder, attention-deficit hyperactivity disorder, bipolar disorder, and generalized anxiety disorder and suffers from panic attacks. She has a history of other conditions, including gastritis, hemorrhoids, colon polyps, and

colon cancer. Pamela graduated from high school and has a CNA certification. Her past jobs include nurse assistant, claims clerk, and court clerk.

The Social Security Administration denied Pamela's application initially on April 29, 2016, and again upon reconsideration on November 28, 2016. Pamela filed a timely request for a hearing and appeared before administrative law judge Kimberly Cromer on May 17, 2018. (R. 40-61). On August 27, 2018, the ALJ issued her decision finding that Pamela's degenerative disc disease of the lumbar spine, with stenosis status post motor vehicle accident; degenerative joint disease of the bilateral shoulders status post rotator cuff tear; irritable bowel syndrome; Crohn's disease; and chronic obstructive pulmonary disease are severe impairments, but they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 11. *Id*. at 17, 21-22. She determined that Pamela's bipolar disorder, depression, hypertension, gastroesophageal reflux disease, urinary frequency, gastritis, hemorrhoids, colon polyps, and colon cancer are not severe. *Id*. at 18-19.

After reviewing the record, the ALJ concluded that Pamela retains the residual functional capacity ("RFC") to perform light work except she can: never climb ladders, ropes, or scaffolds, or crawl; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; frequently reach in all directions bilaterally, except only occasionally reach overhead bilaterally; and occasionally operate foot controls bilaterally. (R. 22). Pamela must avoid concentrated exposure to vibration, temperature extremes of heat and cold, humidity, pulmonary irritants, and work at unprotected heights or around hazardous machinery and must work on a flat, even surface. *Id*. The ALJ accepted the VE's testimony that a person with Pamela's background and RFC can perform her past work as a claims clerk and court clerk, both as generally and actually perform. *Id*. at 26, 56-57. As a result, the ALJ found that Pamela was not disabled from the May 15, 2015 alleged onset

date through the date of the decision. *Id*. at 26. The Appeals Council denied Pamela's request for review, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-8; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2017).

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154

(2019) (quoting *Consol. Edison Co. v. NLRB*, 305 US 197, 229 (1938)).  "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d at 940.  Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

Pamela argues that the ALJ erred in failing to adequately explain why she did not include any restrictions related to her mental limitations in the RFC.  The Court agrees that remand is required because the ALJ's analysis fails to show that she considered the combined impact of Pamela's non-severe bipolar disorder and depression with her other severe and non-severe physical impairments on her ability to perform her past relevant work.

The ALJ found at step two that Pamela's bipolar disorder and depression are not severe mental impairments but nevertheless caused mild limitations in all four of the paragraph B criteria. (R. 19).  At the end of her step two analysis, the ALJ recognized that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3" and that the mental RFC assessment "used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B." *Id*. at 21; *see* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  The ALJ stated that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found" in the paragraph B mental function analysis. *Id*. at 19.  Subsequently, however, the ALJ provided no additional analysis of Pamela's bipolar disorder and depression or her mild mental limitations in her RFC assessment. *Id*. at 22-25.  Nor did the ALJ include any non-exertional or mental restrictions in her RFC assessment or explain why she omitted any such restrictions.

The Seventh Circuit has noted that "it is proper to read the ALJ's decision as a whole." *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five."); *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) ("[t]he five-step evaluation process comprises sequential determinations that can involve overlapping reasoning. This is certainly true of step three and the RFC determination that takes place between steps three and four . . . ."). Accordingly, the Court will review the ALJ RFC's analysis in light of her step-two analysis. *Jenkins v. Saul*, 2020 WL 7771142, at *13 (N.D. Ill. Dec. 29, 2020) ("assum[ing] that the ALJ's RFC analysis incorporates his step-two analysis."). Nevertheless, the ALJ failed to build a logical bridge between the combined effect of Pamela's mental impairments with her severe and non-severe physical impairments and her RFC assessment which included no work-related mental limitations. *Zblewski v. Astrue*, 302 F. App'x 488, 492 (7th Cir. 2008) ("RFC determination must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled."); *Spraggins v. Colvin*, 2015 WL 2444496, at *10 (N.D. Ill. May 20, 2015) ("In cases where an applicant has multiple impairments . . . the 'logical bridge from the evidence to the conclusion' must include an analysis of the combined effect of the impairments.").

At step two, the ALJ noted that "[t]here is evidence and testimony that [Pamela] contends with bipolar disorder and depression." (R. 18). Pamela has also been diagnosed with attention-deficit hyperactivity disorder, post-traumatic stress disorder, and generalized anxiety disorder, and she experiences panic attacks. *Id*. 500-46. Pamela's mental conditions have been treated with Depakote, Lexapro, Trazodone, Xanax, and Vyvanse. *Id*. At the hearing before the ALJ, Pamela testified that she experiences concentration problems: "I can't focus at all any more. It is almost like I have dementia." *Id*. at 48; *see also id*. at 50 ("I can't concentrate. . . . I can't even cook at

home because I can't trust myself to leave a pot of water on the stove anymore."). She said she is frequently forgetful. *Id*. at 49. Pamela also testified that she experiences panic attacks that can last for a day or longer. *Id*. And on those days, she cannot get out of bed, does not eat or drink, and "become[s] severely depressed." *Id*. Later in the hearing, Pamela stated that she does not sleep well, estimating she was able to sleep a total of four to five hours a night one to two nights a week, but she does not nap. *Id*. at 54-55.

Overall, the ALJ concluded that Pamela's bipolar disorder and depression are not severe and result in "no more than mild limitation in any of the functional areas." R. 20. Under the paragraph B criteria, the ALJ determined that Pamela has mild limitations in the four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. at 19. In reaching her step two conclusion, the ALJ emphasized Pamela's unremarkable mental status examinations. *Id*. at 19-20. She gave great weight to the State Agency psychological consultants who opined that Pamela "would have no more than mild limitation in her mental functioning"; little weight to Pamela's nurse practitioner, Cecilia Berumen; and some weight Pamela's GAF scores of 55. *Id*. at 20. The ALJ also noted Pamela's ability to follow directions well, provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, respond to questions from medical providers without significant issue, attend doctor appointments, consultative exams, and her administrative hearing, attend church and support groups, manage her own finances, present to medical appointments appropriately groomed, and attend medical appointments independently. *Id*. at 19. Despite these abilities, the ALJ found that Pamela has mild limitations in all four mental functional areas. *Id*.

It is well settled that when determining a claimant's RFC, an ALJ must "consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010); *Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013) ("After a 'not severe' finding at step two," the ALJ must "assess the mental impairment in conjunction with the individual's RFC at step four."). While a non-severe impairment standing alone may not significantly limit an individual's ability to work, it "may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton*, 596 F.3d at 423.

Here, the ALJ did not, either in the paragraph B analysis or the RFC assessment, consider the combined impact of Pamela's bipolar disorder and depression with her other severe and non-severe physical impairments. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."). This was error because an ALJ must "consider the *aggregate* effect of [a claimant's] ailments." *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000) (emphasis in original). As a corollary, the ALJ was required to explain the aggregate impact that Pamela's limitations in all four areas of mental functioning have when considered together with her severe physical impairments and limitations. *Muzzarelli v. Astrue*, 2011 WL 5873793, at *24 (N.D. Ill. Nov. 18, 2011) (remanding where "[t]he ALJ gave no indication in either Step 2 or in the RFC analysis that he considered what impact [claimant's] mild functional limitations might have when considered in tandem with her severe physical impairments."). Without an explanation from the ALJ of her consideration of Pamela's mental impairments in combination with her other severe and non-

severe impairments in the RFC, the Court cannot determine whether the ALJ's decision is supported by substantial evidence.

The ALJ's failure to properly explain her assessment of the combined effect of Pamela's bipolar disorder and depression with her other impairments is especially important here because her determination of non-disability was based on Pamela's ability to perform her past work as a claims clerk and a court clerk—both semi-skilled positions listed with an SVP of 4. "That is because even mild limitations in domains like concentration, persistence, or pace can impact a claimant's ability to work in skilled or semi-skilled positions." *Lawrence J. v Saul*, 2020 WL 108428, at *3 (N.D. Ill. Jan. 9, 2020).

As the Dictionary of Occupational Titles shows, a court clerk job requires compiling and submitting periodic reports pertaining to police department activities. DOT 209.362-022. At the administrative hearing, Pamela expressed concern about her ability to handle the mental aspects of a court clerk's work: "[T]hat's an important job . . . if you get somebody's name wrong . . . and you can't remember stuff and you turn that in wrong . . . you could ruin somebody's life and I don't want to be responsible for that." (R. 50). She stated that she was concerned about her ability to pay attention to detail because she "can't concentrate." *Id*. Because the ALJ did not account for all of Pamela's mental limitations in the hypotheticals posed to the VE, the VE did not consider whether Pamela's mild limitations in all four areas of mental functioning would preclude her from performing her past semi-skilled work.[1] *Simon-Leveque v. Colvin*, 229 F.Supp.3d 778, 788 (N.D.

---

[1] The ALJ included limitations related to concentration, persistence, and pace in a few hypotheticals to the VE but he did not mention limitations related to any other paragraph B domains. (R. 58-61). In response, the VE did identify three other unskilled jobs (rental clerk, information clerk, and counter clerk) that an individual with certain limitations related to concentration, persistence and pace could perform, but that hypothetical did not account for any limitations in social functioning. (R. 57-58). Even a minimal impairment in the ability to interact socially could affect a person's ability to work as a rental clerk, information clerk, or counter clerk, which all require an ability to interact with customers or patrons. *See*

Ill. Jan. 17, 2017) ("Because the ALJ did not account for all of Plaintiff's [mild] limitations in his questioning of the VE, it is unclear whether Plaintiff is indeed capable of performing her past relevant work as a brokerage clerk.").  It is possible that even mild limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, or social functioning could affect an individual's ability to perform the semi-skilled claims clerk and court clerk positions. *See Cheryl C. v. Berryhill*, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019) (finding that the job responsibilities of a billing clerk, a semi-skilled position with an SVP of 4, is of "sufficient complexity that even mild limitations in daily activities, social functioning, or concentration, persistence, or pace could impact and individual's ability to perform" the position); *President v. Berryhill*, 2018 WL 4282053, at *3 (N.D. Ill. Sept. 7, 2018) (explaining that mild limitation in social functioning or in concentration, persistence or pace could affect one's ability to perform the job of information clerk, which is a semi-skilled position).  Therefore, the ALJ failed to build an accurate and logical bridge from the evidence to her conclusion that Pamela can perform her past work as a claims clerk and court clerk.

The Commissioner points out that at step two, the ALJ did specifically refer to the evidence relevant to Pamela's mental work-related limitations, including her hearing testimony and statements denying symptoms, repeated unremarkable mental status examinations, and the available medical opinions, including the opinion of Pamela's nurse practitioner and the opinions of the state agency psychologists. Doc. 20 at 11.  The Commissioner contends that these are all valid reasons to find that Pamela required no mental accommodations in the RFC.  However, even in light of this evidence, the ALJ determined that Pamela has mild limitations in all four functional areas.  Without any further explanation, this evidence is not enough to support the conclusion that

---

DOT 295.357-018, 237.367-018, 249.366-010. Therefore, it is unclear whether an individual with mild limitations in social functioning could perform these other unskilled jobs.

Pamela's mild mental limitations in combination with her other impairments require no accommodation in her RFC. *See Jenkins*, 2020 WL 7771142, at *14 ("Without greater explanation of the ALJ's reasoning, the sole evidentiary support for the conclusion that [Pamela] can perform mental work without restrictions cannot be the same evidence that permitted a finding that she has mild mental limitation.").

The Commissioner relies on *Felts v. Saul*, 797 F. App'x 266, 269 (7th Cir. 2019), where the Seventh Circuit rejected the claimant's argument that the ALJ failed in her RFC analysis to assess the cumulative effect of his non-severe depression and concentration problems with his severe physical impairments. *Felts* is distinguishable in that the ALJ in that case "did consider these problems in combination" in her RFC analysis. *Id*. The ALJ's RFC analysis showed that she focused on claimant's physical impairments but also that she considered his reported concentration problems after finding them mild at step two. *Id*. at 268, 269-70. Here, nowhere in her decision does the ALJ discuss or analyze the combined effect of all of Pamela's impairments on her ability to work.

The Commissioner is correct that mild limitations in areas of mental functioning do not necessarily prevent individuals from functioning satisfactorily, and Pamela does not argue otherwise. *See James G. v. Saul*, 2019 WL 4305518, at *6 (N.D. Ill. Sept. 11, 2019). However, although "a mild, or even a moderate, limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, the ALJ must still affirmatively *evaluate* the effects such mild limitations have on the claimant's RFC." *Simon-Leveque*, 229 F.Supp.3d at 787. (emphasis in original). The ALJ did not do so here, and courts in this district have remanded decisions that fail to adequately explain the ALJ's evaluation of the combined effect of a claimant's mental and physical impairments, whether severe or non-severe,

on the ability to work. *Nam v. Saul*, 2020 WL 6781800, at *4-5 (N.D. Ill. Nov. 18, 2020); *Paar v. Astrue*, 2012 WL 123596, at *13 (N.D. Ill. Jan 17, 2012) ("The failure to consider the combined effect of a non-severe mental limitation, together with a claimant's other severe impairments, warrants remand."); *Muzzarelli*, 2011 WL 5873793, at *24 (if the ALJ believed that claimant's "mental limitations were too mild to add to the restrictions that stemmed from her severe impairments," she "was required to state that fact and to make the basis of [her] reasoning clear.").

The Commissioner also asserts that: (1) the ALJ's step two finding was supported by the state agency psychologists' opinions, the many normal mental status examination findings, Pamela's own denials of symptoms to the agency, and the ALJ's proper discounting of Pamela's testimony about mental difficulties; (2) Pamela bears the burden of showing that her mild mental limitations caused restrictions; (3) the impact of Pamela's mental impairments was "only slight in nature" and would not significantly interrupt her basic work activities; and (4) a reasonable adjudicator could agree that Pamela's non-severe mental impairments did not pose RFC limitations. These arguments miss the point. The error here "is one of articulation—or, more accurately, a lack thereof." *Judy D. v. Saul*, 2019 WL 3805592, at *5 (N.D. Ill. Aug. 13, 2019). Moreover, contrary to the Commissioner's assertions, Pamela is not asking the Court to improperly reweigh the mental opinion evidence or to credit a VE's response to a hypothetical about off-task time. Rather, she is asking that the ALJ be required to consider and explain the combined impact of Pamela's bipolar disorder and depression with her other impairments in formulating her RFC. Read as a whole, the ALJ never evaluated the cumulative effects of Pamela's mental and physical impairments (both severe and non-severe) in the decision, and therefore, Pamela's challenge is not an attempt to reweigh the evidence or credit the VE's response regarding off-task time.

11

Finally, citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019), the Commissioner claims that Pamela has not explained what additional restrictions the ALJ should have included in the RFC to account for the impact of her mild mental limitations have on her ability to work in combination with her physical impairments. The Commissioner's argument fails because it ignores Pamela's argument that the ALJ should have evaluated whether Pamela would be off-task during the workday, and if so, for how long.[2]

On remand, the ALJ shall reevaluate Pamela's RFC, considering the interaction of her many mental and physical problems on her ability to work, and explain the basis of her findings. With the assistance of a VE, the ALJ shall determine whether Pamela can perform her past relevant work or any other jobs that exist in significant numbers.

## CONCLUSION

For the reasons discussed above, the Court reverses the ALJ's decision, denies the Commissioner's motion for summary judgment [19], and pursuant to sentence four of 42 U.S.C. § 405(g), remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Dated: March 15, 2021

Sunil R. Harjani
United States Magistrate Judge

---

[2] The VE testified that there would be no jobs available if a person were to be off task more than 15% of the workday. (R. 61).